ACCEPTED
03-14-00463-CV
5061156
THIRD COURT OF APPEALS
AUSTIN, TEXAS
4/28/2015 11:42:37 AM
JEFFREY D. KYLE
CLERK

Cause No. 03-14-00463-CV

| | | |
|---|---|---|
| DON & CAROL TITEL<br>Appellants | § | IN THE FILED IN<br>3rd COURT OF APPEALS<br>AUSTIN, TEXAS |
| | § | THIRD COURT OF 4/28/2015 11:42:37 AM |
| v. | | JEFFREY D. KYLE |
| | § | APPEALS,Clerk |
| MORRIS & LISA MELCHOR,<br>Appellees | § | TEXAS |

Appealed from the County Court at Law #2,

Travis County, Texas

Cause #C1-CV-14-004232

The Honorable David Phillips and Eric Shepperd Presiding

# **APPELLANTS' REPLY BRIEF**

PAUL C. VELTE IV
Counsel for Appellant
State Bar # 20541700
109 E. Hopkins St., Ste. 204
San Marcos, TX  78666
512-353-2299
Fax: 476-9504
Email:  velte@ptexans.com

Request for Oral Argument:  Oral Argument is Requested.

i

## Parties & Counsel

Appellants:  Don Titel and Carol Titel

Counsel for Appellant:
**Paul C. Velte IV** – 109 E. Hopkins St., Suite 204, San Marcos, TX  78666

Appellees:  Morris Melchor and Lisa Melchor

Trial Counsel for Appellee:
**Jay Lea**, 8310 Capital of Texas Highway, North, Suite 490, Austin, Texas 78731

On appeal:  Same.

# TABLE OF CONTENTS

**PARTIES & COUNSEL** ..............................................................................II

**TABLE OF CONTENTS** ...........................................................................III

**INDEX OF AUTHORITIES** .....................................................................IV

**ISSUES PRESENTED** ..............................................................................5

    Does a duty exist from among land owners to avoid foreseeable risks of wildfire?...........................................................................................................5

**STATEMENT OF FACTS** ........................................................................5

**REBUTTAL ARGUMENT & AUTHORITIES**.......................................6

   Existence of Duty ...................................................................................7

**PRAYER**....................................................................................................9

**APPENDIX**...............................................................................................11

# INDEX OF AUTHORITIES

## CASES

*Edward D. Jones & Co. v. Fletcher*, 975 S.W.2d 539  (Tex. 1998)...............................................8

*Quiktrip corp. v. Goodwin*, 449 S.W.3d 665 (Tex.App.-Ft. Worth 2014). ....................................7

*Trammell Crow v. Gutierrez*, 267 S.W.3d 9, 12 (Tex. 2008)...........................................................8

TO THE HONORABLE JUSTICES OF THE COURT OF APPEALS:

## Issues Presented

Does a duty exist from among land owners to avoid foreseeable risks of wildfire?

## Statement of Facts

Appellants dispute a few of the statements contained in Appellees' brief, as follows:

Page 1: "[I]t is undisputed that Jeremy Melchor was given full control of the Property." If this means to say that Appellees had no control, this is disputed. That Appellees retained title and a position to assert control at any time is undisputed, and this made Jeremy (and his wife and girlfriends) their licensees. To give any more authority than that, made Jeremy and his girlfriend their agents.

As set forth in Appellants' first brief, Appellees insured the property, paid some of the bills, controlled some of the improvements, and stored restaurant equipment there. They made it clear that their son Jeremy was 'out' if he failed to manage the place to their liking.[1] Clearly, Jeremy lived there at their pleasure. Appellees *could* have exercised control to regulate all use of the property. They instead left most or all decisions up to their agents. As outlined in Appellant's first brief, there is more than a scintilla of evidence that Appellees knew of the presence of many children at their residence and of their activities.

## Rebuttal Argument & Authorities

Appellees arguments analyze this case in terms of 'lack of duty,' 'parent and child,' 'negligent entrustment,' and even 'landlord and tenant.' No contention was

[1] Morris Melchor Depo. 47:20 - 48:6 (see CR 525 at 553-54). Note that Ms. Lisa Melchor testified she agreed with everything her husband had testified to in his deposition other than perhaps some dates and ages of children. Lisa Melchor Depo. 4:9 – 20 (CR 505 at 506).

made that Appellees have liability as parents or for negligent entrustment of land. There is also clearly no a landlord/tenant relationship. Appellees insurance policies make it clear they insured the Pickett Lane property as "occupied by immediate family," not as tenants. No other persons had any interest in the land, not even a leasehold interest. Jeremy was a licensee with only as much authority as Appellees granted to him. Therefore, his authority was theirs, and as their agent in charge of the property and the people invited upon it, his negligence is theirs. There is enough evidence of agency to raise a fact question of vicarious liability for the negligence of the adults they left in charge of their residence. This alone is grounds to reverse this summary judgment.

Appellees seem to confuse the separate basis of liability for 'control of children' (which is certainly being asserted in the suit below against the parents) with the separate grounds asserted against Appellees: Their general negligence in creating the situation in the first instance, and their vicarious liability for the negligence of their agents in control of their property in the second instance. *No cause of action is asserted against the grandparents for the acts of their grandchildren, either vicariously or for failing to control said grandchildren.*

What is asserted is that they were obligated to control the risky activities of *all* persons invited upon their premises so as not to menace their neighbors. That some of those persons were children just makes the risks of failing to exercise control even greater. Appellees and their agents in control of the property and invitees had a duty, not just *to* their invitees, as many cases hold, *but to their neighbors*, to take precautions for obvious risks.[2]

If the Court believes "negligent entrustment" is the proper label to apply to the negligence action Appellants have plead in this case, then Appellants respectfully

---

[2] Compare the situation where the Melchors allowed invitees to shoot guns in a negligent fashion causing bullets to traverse property lines.

request the Court to recognize such a cause of action. If that duty is couched in terms of 'negligent entrustment' instead of general negligence, so be it. However, Appellants did not plead a negligent entrustment theory. Instead, Appellants pleaded a case of general negligence on the part of the land owner's *agents* for whom the principals are liable. There is more than a scintilla of evidence in the summary judgment record of agency. The main question for the Court is the existence of a duty by the owners' agents to the owners' neighbors.

Existence of Duty

Appellees argue "no duty." Appellants submit that the burn ban in effect on the day of this fire supplies enough of a duty. The policy reasons for such bans are obvious: They are there to protect ones *neighbors* from wildfire.

If no duty to one's neighbors exists then this case makes a good example of why there should be. The existence of duty is a question of law that can only be found by this court.[3] Can one avoid liability simply by being totally derelict in his management of his invitees? Should they escape liability simply because they chose to keep hands off? Appellees' argument in a nutshell answers 'yes.'

If a visiting child had been injured by this fire, would there be any question as to duty? Should this case turn on who was injured by the negligence of Appellee's agents? There are many cases stating there is a duty to one's invitees.[4] By logical extension, if one owes a duty to ones invitees, they *ought* to owe a similar duty to their neighbors. Why should liability for the same acts and deeds terminate at the property line?

Why should neighbors be afforded less protection than those invited upon Appellees land? Are not neighbors also reasonably to expect that the law protects

[3] *Quiktrip corp. v. Goodwin*, 449 S.W.3d 665, 670 (Tex.App.-Ft. Worth 2014).
[4] *See e.g.*, *Trammell Crow v. Gutierrez*, 267 S.W.3d 9, 12 (Tex. 2008).

7

them from perils caused by neighbors? Plaintiffs urge this court to find a minimal duty, one limited to the setting of fires that can traverse property lines.

> In determining whether a duty should be recognized, we consider "several interrelated factors, including the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant."[5]

In this case the risk is great. The foreseeability is too. The children who caused this fire could have died or worse, suffered terribly. Foreseeability: Who doubts that children left unsupervised in ignitable surroundings might cause a fire? Most everyone knows children in general will be tempted to play with fire, especially when not being supervised.

The burden of guarding against the injury is small: Keep children under supervision (most people do as a habit), keep them on your own property, do not let them wander in combustible environments, do not leave cigarette lighters lying around, but if you choose not to do these things, *at least teach the kids* about the risk of wildfire in such environs. The consequences of placing this burden on defendants is minimal. They are merely the same consequence promoted by statutory burn bans: Don't start open fires during a drought.

If anything, the abhorrent conduct of the Defendant left in charge of the Appellee's residence shows the need for it. It would be good public policy. No

---

[5] *Edward D. Jones & Co. v. Fletcher*, 975 S.W.2d 539, 544 (Tex. 1998)(quoting *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990).

good public policy is served by denying such a duty. It would promote better relations between neighbors, and deter the sorts of abuses suffered by Appellees' neighbors in this case, especially Mr. & Mrs. Rodriguez. Appellees directly benefited from their son's malicious abuse of the Rodriguez property, who sold their property at a loss to Appellees because Mr. Rodriguez felt he had little choice but to do so. Indeed, the 'final straw' for Rodriguez was the same fire that destroyed Plaintiffs' property.

Rodriguez's deposition details a horror story of the neighbor from hell.[6] Few would want a neighbor like Appellees' son Jeremy or his children in close proximity. Lack of adult supervision of, and trespassing by, the Melchor children was a concern of the entire neighborhood. Appellants to this day remain in fear of Jeremy Melchor (quite reasonably in light of what they have learned of the way he manages the property adjacent to theirs). They fear that if this court takes no action, his parents the Appellees, will continue to grant him *carte blanche* to imperil them once again. Appellants ask that *some* duty be imposed upon landowners *not* to imperil their neighbors.

## Prayer

The summary judgment proofs are sufficient to warrant a trial on the merits, and therefore, no summary judgment should have been granted. Appellants pray the judgment of the trial court be reversed and the cause remanded for a trial.

Respectfully Submitted,

Paul C. Velte IV
ATTORNEY FOR APPELLANTS

---

[6] *See generally*, Jose Rodriguez Depo. from p. 14 *et seq.* (CR 321).

Bar #20541700
109 E. Hopkins St., Ste. 204
San Marcos, TX 78666
512-353-2299 Fax 512-476-9504
Email: velte@ptexans.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this document was served upon Jay Lea at the time of e-filing by e-service on April 28, 2015.

Paul C. Velte IV

## CERTIFICATE OF LENGTH

I hereby certify that the length of this brief is 1652 words total.